UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| A'SHA HALL, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) CASE NO.: ) |
| v. | ) CLASS ACTION ) |
| WE RAISE YOUR CREDIT SCORE INC., | ) JURY TRIAL DEMANDED ) ) |
| Defendant. | ) ) |

**CLASS ACTION COMPLAINT**

**I.     PRELIMINARY STATEMENT**

1. Plaintiff A'sha Hall, individually and on behalf of all others similarly situated, files this Class Action Complaint against Defendant We Raise Your Credit Score Inc. Plaintiff alleges, based on personal knowledge as to Defendant's actions and upon information and belief as to all other matters, as follows:

**II.     NATURE OF THE CASE**

2. This is a consumer class action based upon Defendant's violations of the Credit Repair Organizations Act, 15 U.S.C. §§ 1679, *et seq*. ("CROA"). Plaintiff brings this action on behalf of hundreds, if not thousands, of consumers who have been the subject of Defendant's illegal practices under the CROA.

1

## III.   JURISDICTION & VENUE

3. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

4. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## IV.   PARTIES

5. Plaintiff is an adult individual who resides in Atlanta, Georgia.

6. Plaintiff is a "consumer" as defined by the CROA, 15 U.S.C. § 1679a(1).

7. Defendant regularly conducts business in this division and district, as evidenced by its interactions with Plaintiff, and it can be served via its registered agent, Demetrius Early, located at 2602 Betty Street in Shreveport, LA  71108.

8. Defendant is a "credit repair organization" as defined by the CROA, 15 U.S.C. § 1679a(3).  It uses an instrumentality of interstate commerce to sell, provide and perform its service in return for the payment of money for the express purpose of improving consumers' credit records, credit histories, and credit ratings, and for providing advice or assistance to consumers with regard to improving consumers' credit.

9. According to Defendant, it will "create a custom program to raise your credit score," and it "guarantees that all items from all Credit Bureaus that you want

us to dispute will be disputed to the best of our abilities." *See* https://weraisecredit.com (last visited August 19, 2021).

10. Defendant also advertises that it "offer[s] flexible pricing starting with a one-time $500 fee." *See* https://weraisecredit.com (last visited August 19, 2021).

11. Defendant has operated a credit repair service in Georgia, despite that operation of a credit repair service in Georgia is illegal (O.C.G.A. § 16-9-59).

## V. FACTUAL ALLEGATIONS

12. The CROA was passed in 1996 in response to the growing trend whereby credit repair organizations used abusive and misleading practices to take advantage of debtors seeking to improve their credit records. *See* 15 U.S.C. § 1679(a); *Fed'l Trade Comm'n v. Gill,* 265 F.3d 944, 947 (9th Cir. 2001).

13. When it enacted the CROA, Congress aimed to ensure that consumers "are provided with the information necessary to make an informed decision regarding the purchase of such services," and "to protect the public from unfair and deceptive advertising and business practices by credit repair organizations." 15 U.S.C. § 1679(b).

14. In support of those purposes, "Congress developed a scheme to subject credit repair organizations to certain *ex ante* disclosure requirements in dealing with consumers and to prohibit them from engaging in deceptive practices injurious to the public." *Zimmerman v. Cambridge Credit Counseling Corp.*, 529 F. Supp. 2d

254, 258 (D. Mass. 2008), *aff'd sub nom. Zimmerman v. Puccio*, 613 F.3d 60 (1st Cir. 2010).

15. As part of that scheme, the CROA prohibits credit repair organizations from, among other things, "charg[ing] or receiv[ing] any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer *before such service is fully performed*." 15 U.S.C. § 1679b(b) (emphasis added).

16. The CROA also requires credit repair organizations to provide disclosures to consumers before any contract or agreement between the organization and the consumer is executed. The CROA requires a credit repair organization to disclose:

> **Consumer Credit Rights Under State and Federal Law**
>
> You have a right to dispute inaccurate information in your credit report by contacting the credit bureau directly. However, neither you nor any 'credit repair' company or credit repair organization has the right to have accurate, current, and verifiable information removed from your credit report. The credit bureau must remove accurate, negative information from your report only if it is over 7 years old. Bankruptcy information can be reported for 10 years.
>
> You have a right to obtain a copy of your credit report from a credit bureau. You may be charged a reasonable fee. There is no fee, however, if you have been turned down for credit, employment, insurance, or a rental dwelling because of information in your credit report within the preceding 60 days.

The credit bureau must provide someone to help you interpret the information in your credit file. You are entitled to receive a free copy of your credit report if you are unemployed and intend to apply for employment in the next 60 days, if you are a recipient of public welfare assistance, or if you have reason to believe that there is inaccurate information in your credit report due to fraud.

You have a right to sue a credit repair organization that violates the Credit Repair Organizations Act. This law prohibits deceptive practices by credit repair organizations.

You have the right to cancel your contract with any credit repair organization for any reason within 3 business days from the date you signed it.

Credit bureaus are required to follow reasonable procedures to ensure that the information they report is accurate. However, mistakes may occur.

You may, on your own, notify a credit bureau in writing that you dispute the accuracy of information in your credit file. The credit bureau must then reinvestigate and modify or remove inaccurate or incomplete information. The credit bureau may not charge any fee for this service. Any pertinent information and copies of all documents you have concerning an error should be given to the credit bureau.

If the credit bureau's reinvestigation does not resolve the dispute to your satisfaction, you may send a brief statement to the credit bureau, to be kept in your file, explaining why you think the record is inaccurate. The credit bureau must include a summary of your statement about disputed information with any report it issues about you.

The Federal Trade Commission regulates credit bureaus and credit repair organizations. For more information contact:

The Public Reference Branch
Federal Trade Commission
Washington, D.C. 20580

15 U.S.C. § 1679c(a).

17.     Additionally, the CROA requires that credit repair organizations may not provide services to consumers unless they have a written contract with the consumers.  15 U.S.C. § 1679d(a).  The CROA requires that the contract contain, among other things, "an estimate of . . . the date by which the performance of the services . . . will be complete," "the length of the period necessary to perform such services," and:

> a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'

15 U.S.C. § 1679d(b).

18.     The CROA provides for civil liability when a credit repair agency fails to comply with the law.  First, it provides for actual damages of "the greater of – (A) the amount of any actual damage suffered by the consumer as a result of such failure; or (B) any amount paid by the person to the credit repair organization."  15 U.S.C. § 1679g(A)(1).  Second, it provides for punitive damages of "the sum of – (i) the aggregate of the amount which the court may allow for each named plaintiff; and (ii) the aggregate of the amount which the court may allow for each other class member, without regard to any minimum individual recovery."  15 U.S.C. § 1679g(A)(2)(B).

Third, it provides for the "costs of the action, together with reasonable attorneys' fees." 15 U.S.C. § 1679g(A)(3).

**The Experience of Plaintiff**

19. In July 2020, Plaintiff sought out credit repair services from Defendant.

20. As part of the application, Defendant informed Plaintiff that "$1,500 is due at the time of sign up and is not negotiable to be paid at a later time." It also told Plaintiff that "[o]nce the application packet is filled out and payment is made there will be NO REFUNDS!"

21. Defendant also provided to Plaintiff a Service Agreement that described its services. Despite it being illegal to operate a credit repair service in Georgia, Defendant's Service Agreement stated:

> This agreement has been formed between We Raise Your Credit Score, Inc. (Company) and the undersigned (Client) for the purpose of enrolling in our credit restoration program. We Raise Your Credit Score Inc acting in the capacity of Consumer Advocate will assist the client in understanding their credit reports with TransUnion, Experian and Equifax. We will also help the client investigate and attempt to correct inaccurate, outdated, erroneous, invalidated and time barred information on their credit reports. We will also assist the client in rebuilding, maintaining existing, and or establishing new credit. We Raise Your Credit Score Inc agree to act diligently in the pursuit of this matter, and will carry out this agreement within all Federal and States laws.
>
> The client understands and agrees that they will be charged for all costs and fees associated with our Credit Restoration Program. We Raise Your Credit Score Inc agree to perform the fast track program for $1,500. Additional fees can and will be applied if the client requests additional services.

22. The Service Agreement contained none of the disclosures required under 15 U.S.C. § 1679c(a). Nor did it contain any of the Section 1679d(b) disclosures either.

23.     Nonetheless, Plaintiff signed the Service Agreement on August 10, 2020 and paid Defendant its non refundable fee.[1]

24.     Defendant charged and received Plaintiff's fee for the performance of its illegal services before it fully performed these services.

25.     By paying Defendant's fee before she should have been required to, Plaintiff suffered a financial injury. Specifically, Plaintiff was deprived of the use of her money, and she lost the time value of money before it should have been paid. *See, e.g., Ensminger v. Credit Law Ctr., LLC*, No. 19-2147-JWL, 2019 WL 4341215, at **3-4 (D. Kan. Sep. 12, 2019) (finding that plaintiff suffered a concrete and tangible injury when he lost the time value of money in paying credit repair fees before he should have been required to do so).

26.     As part of its services, Defendant advised Plaintiff on how she should deal with her creditors. As one example, Plaintiff sought advice from Defendant on how she should respond to a debt collection law firm that was threatening to garnish her wages in connection with an American Express account.

27.     Defendant advised Plaintiff to ignore the debt collection law firm, which caused the creditor to file a lawsuit against Plaintiff and Plaintiff's credit score to be impacted in a negative manner.

---

[1] Upon review of Plaintiff's file, Defendant agreed to reduce its price from $1,500 to $1,000. Plaintiff paid Defendant $400 of the fee on August 10, 2020, and the remaining $600 on August 14, 2020.

## VI. CLASS ACTION ALLEGATIONS

28. Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class:

> All natural persons residing within the United States and its Territories about whom, beginning five years prior to the filing of this Complaint and continuing through the conclusion of this action, (i) entered into a Service Agreement with We Raise Your Credit Score, Inc., and (ii) paid We Raise Your Credit Score, Inc. money before We Raise Your Credit Score, Inc. fully performed its services.

29. Plaintiff reserves the right to amend the definition of the Class based on discovery or legal developments.

30. **Numerosity. FED. R. CIV. P. 23(a)(1).** The Class members are so numerous that joinder of all is impractical. Upon information and belief, Defendant has engaged hundreds, if not thousands, of consumers each year, and those persons' names and addresses are identifiable through documents maintained by Defendant.

31. **Existence and Predominance of Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class and predominate over the questions affecting only individual members. The common legal and factual questions include, among others, whether Defendant violated the CROA.

32. **Typicality. FED. R. CIV. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each Class member. Plaintiff has the same claims for statutory and

punitive damages as Class members, arising out of Defendant's common course of conduct.

33. **Adequacy. FED. R. CIV. P. 23(a)(4).** Plaintiff is an adequate representative of the Class. Her interests are aligned with and not antagonistic to, the interests of the members of the Class she seeks to represent, she has retained counsel competent and experienced in such litigation, and she intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the Class.

34. **Predominance and Superiority. FED. R. CIV. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The actual and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and

factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## VII. CAUSES OF ACTION

### COUNT 1

35. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

36. Plaintiff is a "consumer" as defined by the CROA, 15 U.S.C. § 1679a(1).

37. Defendant is a "credit repair organization" as defined by the CROA, 15 U.S.C. § 1679a(3). It uses an instrumentality of interest commerce to sell, provide and perform its service in return for the payment of money for the express purpose of improving a consumer's credit record, credit history, and credit rating, and for providing advice or assistance to consumers with regard to improving consumers' credit.

38. The CROA requires certain disclosures from credit repair organizations to consumers, and it prohibits credit repair organizations from "charg[ing] or receiv[ing] any money or other valuable consideration for the performance of any

service which the credit repair organization has agreed to perform for any consumer *before such service is fully performed.*" 15 U.S.C. § 1679b(b) (emphasis added).

99. Defendant violated the CROA when it charged and received from Plaintiff, and other consumers, money for the performance of its services which it had agreed to perform before such services were fully performed.

100. As a result of Defendant's violations, Plaintiff and Class Members are entitled to their actual damages of the amounts they paid to Defendant, as well as punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1679g(A)(2)(B).

101. Plaintiff is entitled to recover attorneys' fees pursuant to 15 U.S.C. § 1679g(A)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for relief as follows:

A. An order certifying the case as a class action on behalf of the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B. An award of actual and punitive damages for Plaintiff and the Class;

C. An award of pre-judgment and post-judgment interest as provided by law;

D. An award of attorney's fees and costs; and

E.     Such other relief as the Court deems just and proper.

## **TRIAL BY JURY**

Plaintiff hereby requests a trial by jury on those causes of action where a trial by jury is allowed by law.

DATE: August 23, 2021

                                    **WEINER & SAND LLC**

By:   /s/ Andrew Weiner
       Jeffrey B. Sand
       GA Bar No. 181568
       Andrew L. Weiner
       GA Bar No. 808278
       800 Battery Avenue SE
       Suite 100
       Atlanta, GA 30339
       T: 404.205.5029
       T: 404.254.0842
       F: 866.800.1482
       E: aw@wsjustice.com
       E: js@wsjustice.com

       *Attorneys for Plaintiff*